**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF VIRGINIA**
LYNCHBURG DIVISION

CLERKS OFFICE U.S. DIST. COURT
LYNCHBURG, VA
FILED
May 14, 2026
LAURA A. AUSTIN, CLERK
BY: /s/ B. McAbee
DEPUTY CLERK

GLORIA DAMPTEY,

*Plaintiff,*

v.

TRUIST BANK,

*Defendant.*

CASE NO. 6:26-CV-00050

MEMORANDUM OPINION AND ORDER

JUDGE NORMAN K. MOON

Plaintiff Gloria Damptey ("Damptey")—a former employee of Truist Bank—filed a Title VII form complaint without paying the $400 filing fee. *See* Dkt. 1. Instead, she filed a motion for leave to proceed *in forma pauperis* ("IFP"), *see* Dkt. 2, which the Court hereby grants. Given her IFP status, the Court must conduct an initial screening of her complaint, *see Eriline Co. S.A. v. Johnson*, 440 F.3d 648, 656 (4th Cir. 2006), and must *sua sponte* dismiss her cause of action if it fails to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B)(i)-(ii). Because her complaint fails to state a claim for race discrimination or hostile work environment, her Title VII action must be dismissed.

## I.     LEGAL STANDARDS

28 U.S.C. § 1915(e) permits district courts to, on their own motion, dismiss IFP complaints that are frivolous, malicious, or fail to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B); *Michau v. Charleston Cnty.*, 434 F.3d 725, 728 (4th Cir. 2006). This procedural vehicle is governed by the same standard as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Minter v. Clarke*, 2022 WL 4537904, at *3 (E.D. Va. Sep. 12, 2022) (comparing standards). To survive this stage, a plaintiff's complaint must allege "enough facts to state a claim to relief that is plausible

on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A court must accept a plaintiff's factual allegations as true and must draw all reasonable inferences in the plaintiff's favor. *Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty.*, 684 F.3d 462, 467 (4th Cir. 2012). Although a complaint "does not need detailed factual allegations," a plaintiff must provide "more than labels and conclusions [or] a formulaic recitation of the elements of a cause of action" in order to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

Because Damptey is proceeding *pro se*, the Court must liberally construe her complaint. *See Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). However, the Court need not draw inferences that are "unsupported by facts alleged in the complaint." *Green v. McHugh*, 793 F. Supp. 2d 346, 349 (D.D.C. 2011); *see also Grigg v. Montana Dep't of Justice, et al.*, 2026 WL 1134159, at *2 (D.N.D. Feb. 4, 2026).

## II.    BACKGROUND

Damptey alleges she was fired "in retaliation" for "letting a customer know she can open an account at another branch," and because she was late to work because of inclement weather. Dkt. 1 at 4–5.  She also claims that her supervisor used the term "cotton picking" in the workplace. *Id.* at 4.

Damptey claims she was terminated on "February 20th." *Id.* at 2. Presumably that termination occurred in 2025 because she also claims she filed her Equal Employment Opportunity Commission ("EEOC") complaint on November 19, 2025, *id.*, and she received a right to sue letter from the EEOC on February 6, 2026.[1] Dkt. 1-1.

---

[1]    Damptey could not have filed an EEOC complaint about her allegedly unlawful termination on November 19, 2025, if her termination did not take place until February 20, 2026.

III.    DISCUSSION

To begin with, it appears Damptey's EEOC charge was untimely filed. Title VII requires a plaintiff to file an EEOC charge within 180 days of the discriminatory conduct.  *See* 42 U.S.C. § 2000e-5(e)(1).  Damptey appears to allege that she was terminated on February 20, 2025; however, she did not file her EEOC charge until November 19, 2025—at least 272 days later. Dkts. 1 and 1-1. Although filing a timely EEOC charge is not jurisdictional, *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002), Damptey's failure to timely file her charge would almost certainly end her case. Nevertheless, the Court does not base its § 1915(e) dismissal on timeliness because Damptey's Title VII claim falters for more fundamental reasons. Namely, she fails to allege a discriminatory discharge or the type of "harassment" that would constitute a race-based hostile work environment.

A.  **Discriminatory Discharge**

Title VII renders it unlawful for an employer to "discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1).  A plaintiff establishes a *prima facie* case of discriminatory discharge under Title VII by showing: (1) she is a member of a protected class; (2) she suffered an adverse employment action; (3) at the time the employer took the adverse employment action, she was performing at a level that met his employer's legitimate expectations; and (4) the position was filled by a similarly qualified applicant outside the protected class or other employees who are not members of the protected class were retained under similar circumstances. *See Coleman v. Md. Court of Appeals*, 626 F.3d

---

Likewise, the EEOC's right to sue letter could not cover her termination if her termination took place after the EEOC issued its letter.

3

187, 190 (4th Cir. 2010); *Honor v. Booz–Allen & Hamilton, Inc.*, 383 F.3d 180, 188 (4th Cir. 2004). Damptey fails to allege two of these four elements.

Although Damptey fails to allege her race, the Court will assume she is a member of a protected class.[2] She also alleges she was terminated, which establishes the second element of the *prima facie* case. *See Coleman*, 626 F.3d at 190. However, her complaint contains no allegations that would allow the Court to infer that Damptey was meeting Truist's legitimate expectations or that she was replaced by someone outside her protected class.

To begin with, Damptey admits she was terminated, at least in part, for being late to work on "snow days" and for contradicting her supervisor in front of a customer. Dkt. 1 at 4–5. An employer can legitimately expect its employees to: (1) be on time to work regardless of weather conditions, and (2) follow the instructions of management.[3] Therefore, based on her own pleadings, it appears Damptey was not meeting Truist's legitimate expectations. Regardless, Damptey raises no allegations  suggesting she was replaced by someone outside her protected class.  Accordingly, she fails to state a discriminatory discharge claim.

---

[2]    Since the Supreme Court's decision in *Ames v. Ohio Dep't of Youth Servs.*, 605 U.S. 303, 310 (2025)—which eliminated any different between the pleading standards for majority-group and minority-group plaintiffs—it is difficult to see how anyone could fail to plead this element. The key to the analysisis whether there is some indicia of race-based discrimination, no matter the race of the plaintiff.

[3]    Plaintiff asserts she was "retaliated" against by her supervisor for contradicting her supervisor in front of a customer. Dkt. 1 at 4–5. Plaintiff has not stated a Title VII retaliation claim because she has not alleged that she reported racial discrimination (*i.e.*, engaged in protected activity) and that she was terminated because of that protected activity. *See EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 405–06 (4th Cir. 2005) ("To establish a prima facie case of retaliation, a plaintiff must prove three elements: (1) that she engaged in a protected activity; (2) that her employer took an adverse employment action against her; and (3) that there was a causal link between the two events."). An employer can "retaliate" against (*i.e.*, discipline) an employee for insubordination or for failing to follow company policies without running afoul of Title VII.

### B. Hostile Work Environment

An employer also contravenes Title VII by requiring an employee to work in an environment that is hostile to her race. *See Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65–67 (1986) (citing 42 U.S.C. § 2000e–2(a)(1)). To succeed on a hostile-work-environment claim a plaintiff must show that there is: "(1) unwelcome conduct; (2) that is based on the plaintiff's ... [race]; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer." *McIver v. Bridgestone Americas, Inc.*, 42 F.4th 398, 407 (4th Cir. 2022); *see also Okoli v. City of Baltimore*, 648 F.3d 216, 220 (4th Cir. 2011)).

A hostile work environment claim fails unless "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id.*; *see also Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). A hostile-work-environment claim almost always "involves repeated conduct," *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002); however, a single incident of harassment can constitute a hostile work environment if it is "extremely serious" so as to "*Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015). The ultimate inquiry, though, is whether the conduct is so "extreme" as to "amount to a change in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).

In prior cases, courts have found that a single utterance of the n-word or other racial slurs can create a racially hostile work environment. *E.g.*, *Boyer-Liberto*, 786 F.3d at 280; *Adams v. Austal, U.S.A., L.L.C.*, 754 F.3d 1240, 1253-54 (11th Cir. 2014); *Ayissi-Etoh v. Fannie Mae*, 712 F.3d 572, 577 (D.C. Cir. 2013); *Rodgers v. W.-S. Life Ins. Co.*, 12 F.3d 668, 675 (7th Cir. 1993).

Those cases, however, look to two factors: (i) the long, unpleasant history behind the specific slurs, and (ii) the workplace role of person using them. *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 185 (4th Cir. 2001) (finding hostile work environment where supervisor used racial slur). Put simply, where a supervisor uses a racial slur, courts have been willing to infer a racially hostile work environment and impute liability to the employer.

Damptey alleges her supervisor used the term "cotton picking." Dkt. 1 at 4. The term "cotton picking" has a complex history. *See Reed v. Franciscan All., Inc.*, 2026 WL 622404, at *3 (N.D. Ill. Mar. 4, 2026). The phrase "originates in the American South as a reference to the difficult agricultural labor performed by Black enslaved people and sharecroppers and is therefore seen to be belittling of that labor." *Id.* However, the term also has a non-racial meaning and was once widely used as an alternative to "damn." *Id.*; s*ee* also https://www.collinsdictionary.com/us/dictionary/english/cotton-picking. Given this alternative, non-racial use of the term, Damptey needed to allege some facts showing that her supervisor used the term in a racial manner. Without additional context, the Court cannot say that Damptey has pled extreme harassment that altered her conditions of employment.[4]

Moreover, Damptey has not alleged how often her supervisor used the term, that her supervisor used the term *against* her, or that her supervisor is not in the protected class. For example, if her supervisor is a member of the same protected class, the Court is less likely to infer racial animus. *Cf. Coggins v. Goverment of D.C.*, 173 F.3d 424 (4th Cir. 1999) ("The fact that both

---

[4]    If Damptey had alleged that she is African American and her employer called her a "cotton picker" or suggested she "belonged in a field cotton picking," her Title VII harassment claim would almost certainly have survived the dismissal stage. But given the ambiguities associated with the term "cotton picking," the Court cannot infer—absent *any* context—that the term was used in a derogatory manner rather than being used as a substitute for a swear word.

Krull and Gibbons are both Caucasian makes any anti-Caucasian bias unlikely."). Given these pleading deficiencies, Damptey has not adequately pleaded a hostile work environment.

## IV.    CONCLUSION

Accordingly, Damptey's motion to proceed *in forma pauperis* (Dkt. 2) is **GRANTED**; however, her complaint is dismissed without prejudice pursuant to 28 U.S.C. § 1915(e).

The Clerk shall administratively close this case and mail a copy of this Order to Plaintiff at her last known address.

It is so ordered.

Entered this 14th day of May, 2026.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE